# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**SAMUEL VAINBERG** and **LYNN VAINBERG,**
Appellants,

v.

**FLORIDA INSURANCE GUARANTY ASSOCIATION,**
Appellee.

No. 4D2025-1219

[August 12, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jaimie Randall Goodman, Judge; L.T. Case No. 502017CA011381XXXXMB.

Samuel Alexander and Michael J. Ellis of Alexander Appellate Law, P.A., Jacksonville, for appellants.

Hinda Klein of Conroy Simberg, Hollywood, for appellee.

GROSS, J.

After the entry of a consent judgment between the insureds and Florida Insurance Guaranty Association (FIGA), the insureds moved for an award of attorney's fees and costs. The trial court denied their motion, and the insureds have appealed that order.

We reverse the order denying the insureds' request for attorney's fees and remand to the circuit court for a determination of the amount of fees. We do so for two reasons. First, we hold that section 627.428, Florida Statutes (2015), covers fees incurred in litigation involving a repair contract that arises "under a policy or contract executed by the insurer." Second, we conclude that section 631.70, Florida Statutes (2022), did not preclude an award of attorney's fees, because under the facts of this case FIGA "denie[d] by affirmative action, other than delay" a portion of the insureds' claim.

## Background

This case's background was summarized in *Vainberg v. Avatar Prop. & Cas. Ins. Co.*, 321 So. 3d 231, 233 (Fla. 4th DCA 2021) ("*Vainberg I*").

Samuel and Lynn Vainberg owned a condominium insured by Avatar Property and Casualty Insurance Company ("Avatar"). *Id.* In 2015, a water supply line broke, flooding the Vainbergs' home and damaging the flooring. *Id.* The Vainbergs promptly notified Avatar of the loss. *Id.*

After inspecting the property, Avatar exercised its option under the policy to repair the condominium, creating a new repair contract pursuant to *Drew v. Mobile USA Insurance Co.*, 920 So. 2d 832 (Fla. 4th DCA 2006). *Vainberg I*, 321 So. 3d at 233–34.

Avatar's chosen contractor replaced the flooring, but the Vainbergs notified Avatar that the contractor's work was deficient. *Id.* at 233. When Avatar offered to have the same contractor return and correct only a portion of the defective work, the Vainbergs declined. *Id.* at 233–34. Ultimately, Avatar notified the Vainbergs that it would not address the contractor's deficient performance. *Id.* at 234.

## Original Complaint, Avatar's Answer, and Trial

The Vainbergs sued Avatar, asserting two counts: (1) declaratory relief that the policy's pre-suit conditions did not apply to a *Drew* repair contract; and (2) breach of the *Drew* contract for failing to restore the property to its pre-loss condition. Both counts sought attorney's fees under section 627.428, Florida Statutes (2015).

Avatar answered the complaint and asserted affirmative defenses premised on the Vainbergs' alleged breach of policy conditions, including their failure to provide a timely sworn proof of loss and failure to appear for examinations under oath.

At trial, the circuit court refused to instruct the jury on the law related to *Drew* contracts. *Vainberg I*, 321 So. 3d at 234. The circuit court also allowed Avatar to argue an unpled theory that the Vainbergs had abandoned the repair contract. *Id.* at 235. The jury returned a verdict for Avatar, and the circuit court entered judgment accordingly. *Id.*

### First Appeal: *Vainberg I*

On appeal, we reversed and remanded for a new trial, holding that the trial court "erred by failing to give the requested *Drew* contract instruction and by allowing the insurer to argue an unpled defense." *Id.* at 233. Quoting *Drew*, we observed that "when the insurer makes its election to repair, that election is binding upon the insured and *creates a new contract* under which the insurer is bound to perform repairs within a reasonable time." *Id.* at 235 (quoting *Drew*, 920 So. 2d at 835) (alteration omitted).

We further wrote that the Vainbergs and Avatar became "parties to a separate repair contract wherein the insurer is obligated to perform repairs which will adequately return the insured property to its pre-loss condition." *Id.* This repair contract, which was formed when Avatar elected to repair, was "separate and distinct" from the insurance policy. *Id.* Accordingly, we held that the trial court abused its discretion by refusing to give a *Drew* contract instruction, particularly where Avatar had "erroneously attempted to impose post-loss policy provisions which are not terms of the *Drew* contract." *Id.* at 236.

While *Vainberg I* was pending, the Vainbergs moved for a conditional award of appellate attorney's fees. The sole basis for the motion was section 627.428(1), Florida Statutes (2015). We granted the motion conditioned on the trial court determining that the Vainbergs were the prevailing party.[1]

### Avatar's Insolvency, FIGA's Substitution into the Case, and FIGA's Partial Payment of the Vainbergs' Estimate

In March 2022, after the case had been remanded to the trial court, another court declared Avatar to be insolvent and appointed a receiver, triggering an automatic stay of the instant litigation.

---

[1] The Vainbergs never presented any argument to the trial court that our conditional fee award in *Vainberg I* was the law of the case as to the applicability of section 627.428. Therefore, the Vainbergs' law-of-the-case argument, which they raised for the first time in this appeal, was not preserved for appellate review. *See Kessler v. State*, 991 So. 2d 1015, 1018–19 (Fla. 4th DCA 2008) (refusing to consider law-of-the-case argument because the appellant "did not raise this law-of-the-case issue sufficiently to preserve it for appeal"); *Hentze v. Denys*, 88 So. 3d 307, 310–11 (Fla. 1st DCA 2012) (observing that a party must preserve a law-of-the-case argument by raising it in the trial court).

In an April 2022 order, the trial court stayed this case pending Avatar's liquidation and determined that FIGA "is deemed the insurer and, as such, is now the defendant in this case." That same month, the Vainbergs' counsel provided FIGA's adjuster with: (1) a letter of representation; (2) the insurance policy; (3) the plaintiffs' general contractor's estimate used as the basis for damages at trial; (4) the complaint; (5) Avatar's answer; (6) Avatar's amended answer; and (7) Avatar's second amended answer.

During its investigation of the Vainbergs' claim, FIGA inspected the Vainbergs' home in May 2022 and again in October 2022.

In August 2022, despite the Vainbergs' request for payment of the general contractor's $49,674.94 repair estimate, FIGA paid the Vainbergs only $19,000 on their claim, subtracting various line items, including items related to "Ordinance and Law"[2] coverage, such as electrical upgrades and architectural and drafting fees.

FIGA's corporate representative would later testify that the $19,000 payment was a mistake because the entire claim was not a covered claim. The $49,674.94 estimate, which included items for code upgrades, was the same amount that the Vainbergs had sought at the first trial.

In November 2022, even though the trial court had already entered the April 2022 order substituting FIGA as the party defendant, the Vainbergs moved to substitute FIGA as the party defendant and to change the case caption accordingly. In February 2023, the trial court granted the motion and ordered that the Vainbergs "shall amend the Complaint to substitute FIGA in place of the Insolvent Insurer."

### Proceedings Against FIGA

In February 2023, the Vainbergs filed an amended complaint against FIGA for breach of contract, alleging that "Avatar and FIGA breached the repair contract because Avatar's contractor performed defective repairs to the Vainbergs' home, and Avatar and FIGA denied payment for Ordinance and Law." The amended complaint did not include a request for attorney's fees.

---

[2] "Ordinance and Law" coverage indemnifies property owners for "the cost of bringing any structure . . . into compliance with applicable ordinances or laws." *Jossfolk v. United Prop. & Cas. Ins. Co.*, 110 So. 3d 110, 111 (Fla. 4th DCA 2013).

FIGA filed two motions for an extension of time to respond to the amended complaint, asserting that it needed additional time to review the voluminous case file. Both motions were granted by agreed order.

After the trial court denied FIGA's motion to dismiss the amended complaint, FIGA filed its answer and affirmative defenses in late June 2023. In its fourth affirmative defense, FIGA alleged that "a covered claim is one that is within coverage of the policy issued by Avatar . . . ." In its fifth and sixth affirmative defenses, FIGA alleged that the Avatar policy "does not provide coverage for damage associated with Ordinance or Law," and that "a certain portion of the alleged loss, or claim, did not fall within coverage of the policy."[3] Three months later, FIGA filed an amended answer withdrawing the fifth and sixth affirmative defenses.

In the Vainbergs' reply to FIGA's affirmative defenses, they demanded "attorney's fees pursuant to Section 631.70, Florida Statutes, because FIGA had denied 'a portion' of the claim by 'affirmative action.'"

### Pretrial Stipulation

In the Joint Pretrial Stipulation, FIGA asserted that the Vainbergs' claim was not a "covered claim" because "Chapter 631 does not apply to repair contract claims."

### Summary Judgment Proceedings

Both parties moved for summary judgment.

At the summary judgment hearing, the trial court orally ruled that the claim for breach of the *Drew* repair contract arose out of the insurance policy and was a covered claim under Chapter 631, because "but for" the insurance policy, there would be no election of the right to repair. The court also ruled that the trial would be limited to the claim for breach of the *Drew* repair contract.

### Settlement and Consent Judgment

On March 1, 2024, ten days before a jury trial was set to begin, the parties notified the court that they had settled "the benefits portion of the above action," but that the issue of statutory attorney's fees and costs

---

[3] Later, however, FIGA admitted that it had no proof the Vainbergs had executed a written rejection of the optional Ordinance and Law coverage, so the policy was deemed to include such coverage.

5

remained in dispute. The trial court entered a consent final judgment ordering FIGA to pay the policy limits of $58,000, less the $19,000 that FIGA had previously paid. The court reserved jurisdiction to determine whether the Vainbergs were entitled to attorney's fees and costs.

### *Order Denying Attorney's Fees and Costs*

After extensive briefing, the trial court denied the Vainbergs' motion for attorney's fees and costs.

First, the trial court ruled that section 627.428 did not authorize an award of attorney's fees because the Vainbergs' claims were not brought "under an insurance policy or contract," but rather were brought "under a *Drew* repair contract, which was separate and distinct from the insurance contract." The court emphasized that section 627.428 requires rendition of a judgment "under a policy or contract executed by the insurer," a statutory term that is "narrower in scope" than the term "arising out of." Applying the rule that statutes awarding attorney's fees must be strictly construed, the court found that the Vainbergs' "recovery for claims brought under the *Drew* repair contract [did] not create entitlement to an attorney fee award" because the judgment was not "under" the insurance contract.

Second, the court denied fees because section 631.70 "unambiguously creates the boundaries of FIGA's liability for attorney's fees" by allowing fees only when FIGA denies coverage through affirmative action and an underlying entitlement to fees exists pursuant to section 627.428, neither of which was present in this case.

To reach its conclusion, the trial court relied upon a strained interpretation of the procedural history of this case. The court wrote that the amended complaint had been "improperly filed without leave of court" and "contained allegations as it relates to breach of the insurance policy based on violation of the code and ordinance provisions in the policy that were not part of the original Complaint against Avatar." The court reasoned that the Vainbergs' counsel "was not authorized to amend the Complaint to expand allegations against Defendant FIGA," and that the "Amended Complaint should have been stricken, and the case should have proceeded to trial based on the allegations in the Complaint for breach of the *Drew* repair contract brought against Avatar." For this reason, the court found that "FIGA's assertion of affirmative defenses did not constitute a denial of [the Vainbergs'] claim by affirmative action" because the court had compelled FIGA to answer an unauthorized amended complaint that "was improperly filed without leave." The court also found

6

that FIGA was not liable for taxable costs because it did not affirmatively deny the Vainbergs' claim and there was no coverage for those costs under the policy.

### *A Claim for Breach of a <u>Drew</u> Contract Falls Within the Purview of Section 627.428*

We agree with the Vainbergs that the trial court erred in concluding that a *Drew* repair contract does not fall within the purview of Section 627.428.[4]

Section 627.428(1), Florida Statutes (2015),[5] provides:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under *a policy <u>or</u> contract executed by the insurer*, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

§ 627.428(1), Fla. Stat. (2015) (emphasis added).

Section 627.428 is a one-way fee-shifting statute "offering the potential for attorneys' fees only to the insured or beneficiary." *Danis Indus. Corp. v. Ground Improvement Techs., Inc.*, 645 So. 2d 420, 421 (Fla. 1994). Section 627.428's purpose "is to discourage insurance companies from contesting valid claims, and to reimburse insureds for their attorney's fees incurred when they must enforce in court their contract with the insurance company." *Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403, 410 n.10 (Fla. 1999). "Section 627.428 provides that an incorrect denial of benefits, followed by a judgment or its equivalent of payment in favor of the insured, is sufficient for an insured to recover attorney's fees." *Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1219 (Fla. 2016).

---

[4] FIGA attempts to relitigate whether breach of a *Drew* repair contract is a covered claim under the FIGA statute, but FIGA entered into the consent judgment without reserving the right to appeal the trial court's interlocutory summary judgment ruling. Thus, FIGA cannot relitigate that issue now.

[5] Section 627.428 was repealed effective March 24, 2023. *See* Ch. 2023-15, § 11, Laws of Fla.

Generally, fee shifting statutes are strictly construed because they are in derogation of the common law. *Roberts v. Carter*, 350 So. 2d 78, 78–79 (Fla. 1977). In applying the section 627.428(1) phrase "under a policy or contract executed by the insurer," the Florida Supreme Court has looked to whether the dispute "arises under" the policy. *See Ins. Co. of N. Am. v. Lexow*, 602 So. 2d 528, 531 (Fla. 1992).

Thus, in *Lexow*, the Florida Supreme Court held that attorney's fees were available under section 627.428 for subrogation litigation between the insurer and the insured, reasoning that "[t]here is little difference between paying an insurance claim and then suing for its return and refusing to pay the claim in the first place." *Id.* Because the insurer's "right to claim subrogation exists solely by virtue of having paid a claim under the policy," the Court held that "any dispute with [the insured] concerning subrogation in this case arises under the policy." *Id.*

Similarly, in *Pepper's Steel & Alloys, Inc. v. United States*, 850 So. 2d 462, 467 (Fla. 2003), the Florida Supreme Court held that "where an insured sues its insurer for coverage under a policy and the parties later contest whether they have reached a settlement, section 627.428 allows a prevailing insured to be awarded the attorneys' fees incurred in litigating that issue." "Because this suit *arose under* the policy," our supreme court reasoned, "it is within the scope of section 627.428." *Id.* at 466 (emphasis added).

Likewise, in *Bankers Security Insurance Co. v. Brady,* 765 So. 2d 870 (Fla. 5th DCA 2000), which the Florida Supreme Court approved in *Pepper's Steel,* the Fifth District held that an insured was entitled to attorney's fees under section 627.428 where he was forced to file suit against the insurer for breach of its oral settlement agreement to pay $65,000 for the loss. *Id.* at 871–73. The Fifth District reasoned that if the insured had "filed a breach of contract action and prevailed, he would clearly be entitled to fees under section 627.428," so it would be "unreasonable to deny fees to [the insured] for what is in essence the same action." *Id.* at 873.

Florida courts have also awarded attorney's fees under section 627.428 in the context of declaratory judgment actions. *Bassette v. Standard Fire Ins. Co.*, 803 So. 2d 744, 746–47 (Fla. 2d DCA 2001). *Bassette* held that an insured who prevailed in a declaratory judgment action over the insurer's entitlement to her medical records was entitled to fees where insurer's demands threatened that failure to comply "may result in a denial of coverage." *Id.* at 745–47. The Second District reasoned that the

declaratory action was essentially a dispute "as to whether [the insured] would be covered by the policy[.]"  *Id.* at 746; *see also Mercury Ins. Co. of Fla. v. Cooper*, 919 So. 2d 491, 493 (Fla. 3d DCA 2005) (holding that insured was entitled to fees where insurer made the "unilateral decision to settle an insurance claim and dismiss a related declaratory judgment action," which constituted "the precise legal conduct which has been held, under Florida law, to trigger an insured's entitlement to attorney's fees under section 627.428(1)").

Given the case law construing section 627.428, we conclude that a suit for breach of a *Drew* repair contract falls within the purview of that statute because such a suit arises "under a policy or contract executed by the insurer."

The trial court's analysis drew a distinction between the terms "under" and "arises out of," but that approach ignored Florida Supreme Court precedent suggesting that the proper inquiry under section 627.428 is whether the dispute "arises under" the policy.  A *Drew* repair contract is an alternative method for indemnifying the insured and it comes about from the insurer's exercise of a right-to-repair granted by the policy.  Just as *Lexow* reasoned that a subrogation right "exists solely by virtue of having paid a claim under the policy," a *Drew* repair contract exists solely by virtue of the insurer's exercise of a repair right under the policy, such that any dispute concerning the adequacy of those repairs likewise arises under the policy, bringing the dispute squarely within the statutory text.

The text of section 627.428 also supports this conclusion.  The statute authorizes an award of fees to a prevailing insured under "a policy **or** contract executed by the insurer."  § 627.428(1), Fla. Stat. (2015) (emphasis added).  In interpreting the phrase "under a policy or contract executed by the insurer," we are mindful that "the word 'or' is generally construed in the disjunctive when used in a statute or rule," which "normally indicates that alternatives were intended."  *Sparkman v. McClure*, 498 So. 2d 892, 895 (Fla. 1986) (citations omitted).  "It is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless."  *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 456 (Fla. 1992).

Reading "policy or contract" in the disjunctive means that the action need not be strictly read under the policy itself to award fees.  Rather, the action may be brought under a "contract executed by the insurer." § 627.428(1), Fla. Stat. (2015).  Here, a *Drew* repair contract was formed when Avatar executed a written election-to-repair letter, thereby binding Avatar to restore the Vainbergs' property to its pre-loss condition.  Such a

contract is a "contract executed by the insurer" within the ordinary meaning of those words. To read "contract" as adding nothing beyond "policy" would drain the word of meaning and render it superfluous.

Finally, denying fees in the *Drew* repair scenario would produce the anomaly that *Brady* rejected. If a breach of an oral settlement agreement for payment of the loss falls within section 627.428, it follows that breach of a *Drew* repair contract would fall within the statute as well. The *Brady* court reasoned that where an insured "was forced to file suit against [the insurer] for breach of its agreement to pay for his loss," it would be "unreasonable to deny fees to [the insured] for what is in essence the same action." *Brady*, 765 So. 2d at 873.

So too here. Had Avatar simply refused to pay money for the covered loss, the insureds would unquestionably be entitled to fees under section 627.428. An insurer cannot escape statutory fee liability merely by substituting a repair obligation for a payment obligation, when both flow from the same covered loss and the same policy. To hold otherwise would allow an insurer to immunize itself from fee liability under section 627.428 by electing to repair rather than to pay. Such a result cannot be reconciled with the Florida Supreme Court's holding that section 627.428 was designed to discourage insurance companies from contesting valid claims, and to reimburse insureds for their attorney's fees incurred when they must enforce their contractual rights in court.

### *FIGA's Actions Amounted to a Denial "By Affirmative Action" Within the Meaning of section 631.70*

Section 631.70, Florida Statutes (2022), states that "[t]he provisions of s. 627.428 providing for an attorney's fee shall not be applicable to any claim presented to the association under the provisions of this part, *except when the association denies by affirmative action*, other than delay, a covered claim or a portion thereof."[6] (Emphasis added). The statute thus imposes limits on FIGA's responsibility for section 627.428 fees.

---

[6] Section 631.70 was repealed effective March 24, 2023. *See* Ch. 2023-15, § 24, Laws of Fla. However, section 631.70 still applies to causes of action filed before the effective date of the act repealing the statute. *See* Ch. 2023-15, § 30, Laws of Fla. ("Except as otherwise expressly provided in this act, this act shall apply to causes of action filed after the effective date of this act."). Here, both the complaint and the amended complaint were filed before the effective date of the act.

The Vainbergs argue that the trial court erred in finding that FIGA's actions did not amount to a denial by affirmative action under section 631.70. We agree with the Vainbergs that the trial court failed to address how FIGA's other actions—apart from raising affirmative defenses—amounted to "affirmative denials" that rendered their *Drew* repair claim a covered claim under the statute.

Where FIGA raises an affirmative defense asserting that a claim does not constitute a "covered claim" under the FIGA Act, such a pleading can constitute a denial by affirmative action of a covered claim. *Fla. Ins. Guar. Ass'n v. Gustinger*, 390 So. 2d 420, 421 (Fla. 3d DCA 1980). However, whether FIGA's filing of an answer and affirmative defenses constitutes an affirmative denial depends on the circumstances, including "whether there was a real contest to the claim." *Fla. Ins. Guar. Ass'n v. Messina*, 69 So. 3d 304, 305 (Fla. 4th DCA 2011).

For example, in *Florida Insurance Guaranty Ass'n v. Ehrlich*, 82 So. 3d 849, 850 (Fla. 4th DCA 2011), we held that the insureds were not entitled to attorney's fees under section 631.70, because FIGA's "filing of an answer and affirmative defenses pursuant to a court order did not constitute a 'denial' of appellees' claim by affirmative action other than delay."

There, the insureds sued FIGA just a few weeks after submitting their claim. *Id.* Having had insufficient time to investigate, FIGA twice sought extensions of time to respond to the complaint and then moved to stay the proceedings pending its investigation, but the trial court denied the motions and ordered FIGA to answer the complaint within ten days. *Id.* FIGA filed an answer and affirmative defenses in which it claimed that the insureds had not complied with all conditions precedent to filing suit, but the case ultimately settled. *Id.* In reversing a fee award for the insureds, we reasoned that FIGA "was compelled to answer the complaint by the trial court" and "did not voluntarily deny the claim." *Id.* Rather, FIGA "simply asserted its legitimate defenses under the policy" and essentially "'delayed' paying the claim until it had sufficient time to investigate." *Id.* We emphasized that "[a]t no time did [FIGA] explicitly deny the claim itself." *Id.*

We distinguished *Ehrlich* in *Rahabi v. Florida Insurance Guaranty Ass'n*, 71 So. 3d 241, 243 (Fla. 4th DCA 2011), holding that FIGA denied the insureds' claim "by affirmative action" within the meaning of section 631.70, thereby entitling the insureds to attorney's fees.

We concluded in *Rahabi* that "FIGA explicitly denied the claim by alleging in seven affirmative defenses that the insureds' damages '[were]

11

not caused by a covered loss.'" *Id.* at 244 (alteration in original). Unlike in *Ehrlich*, we emphasized that FIGA had acted voluntarily in asserting affirmative defenses denying coverage, as FIGA had done so "without the circuit court ever compelling FIGA to answer the complaint, and without FIGA requesting more time to 'sufficiently' investigate the claim[.]" *Id.* We also rejected FIGA's argument that it was compelled to raise those defenses to avoid waiver, explaining that if FIGA believed it had insufficient time to investigate, "it should have sought a motion for extension of time to respond to the complaint for that reason," and if that motion were denied, it "should have crafted its answer to avoid any allegation constituting a denial of the claim by affirmative action." *Id.*

More recently, in *Florida Insurance Guaranty Ass'n v. Rubin*, 297 So. 3d 635, 635–36 (Fla. 4th DCA 2020), we held that the insured was not entitled to attorney's fees under section 631.70 where "FIGA never denied [the insured's] claim by affirmative action before he filed suit," as the insured had not notified FIGA of his supplemental claim until after he had already filed suit.

In *Rubin*, FIGA sought a stay of the proceedings and then answered the complaint pursuant to an agreed order, raising affirmative defenses related to policy conditions. *Id.* at 636. We emphasized that "[e]ntitlement to fees is outcome-oriented, existing only '[i]f a dispute arises between an insurer and an insured.'" *Id.* at 637 (citation omitted). We found that FIGA had "raised affirmative defenses in order to preserve them, having had insufficient time to investigate the claim." *Id.* "[S]ince FIGA was required to assert any affirmative defenses in its answer in order to preserve them," we explained, "doing so did not amount to a denial by affirmative action under the statute." *Id.* Because the insured "did not notify FIGA about his claim until after he filed suit," we concluded that the "denial of [the insured's] claims reflected a lack of opportunity to first investigate his contentions, rather than a voluntary denial of his claims," and thus "there was no dispute and no affirmative denial." *Id.*

Here, FIGA's actions amounted to a denial of the claim "by affirmative action, other than delay."

First, FIGA's pre-answer conduct was sufficient to constitute a partial denial of the claim by affirmative action. In August 2022, in response to the Vainbergs' request for payment of the general contractor's $49,674.94 repair estimate, FIGA paid the Vainbergs only $19,000 on their claim. In an email dated September 6, 2022, FIGA explained that it had subtracted multiple items from the Vainbergs' estimate to arrive at the $19,000 payment. Some of these items were clearly related to "Ordinance and Law"

coverage, such as electrical upgrades and architectural/drafting fees. The only possible explanation for some of these line-item cuts was that FIGA had concluded the items were not covered.

Second, FIGA's answer and affirmative defenses also constituted a denial by affirmative action under the circumstances of this case. The crucial fact determination under the *Ehrlich/Rahabi/Rubin* trilogy is whether FIGA was "compelled to file an answer without having sufficient time to investigate the claim."

In contrast to *Rubin,* this was not a case where FIGA was sued out of the blue. Rather, FIGA was substituted into the case during the litigation against Avatar. FIGA thus had the benefit of an automatic six-month litigation stay to investigate the Vainbergs' claim. After the Vainbergs filed the amended complaint, FIGA obtained two agreed extension orders giving it additional time to review the claim file and answer the complaint. Once those extensions had expired, FIGA did not seek a third extension. Instead, FIGA moved to dismiss the amended complaint. The trial court denied the motion to dismiss and ordered FIGA to file an answer. However, the trial court's order for FIGA to file an answer did not "compel" FIGA to do so without having had sufficient time to investigate; the order merely required compliance with the Florida Rules of Civil Procedure. *See* Fla. R. Civ. P. 1.140(a)(3) (providing that "responsive pleadings must be served within 10 days after" the denial of a pre-answer motion).

As in *Rahabi,* if FIGA still believed that it had insufficient time to investigate the claim after the six-month automatic stay and two extensions of time, then FIGA should have moved for another extension of time to respond to the amended complaint for that reason. Moreover, FIGA "should have crafted its answer to avoid any allegation constituting a denial of the claim by affirmative action." *Rahabi,* 71 So. 3d at 244. FIGA did not do so here, but instead voluntarily asserted as affirmative defenses that the Avatar policy "does not provide coverage for damage associated with Ordinance or Law," and that "a certain portion of the alleged loss, or claim, did not fall within coverage of the policy." Like in *Rahabi,* FIGA's answer and affirmative defenses amounted to more than a mere delay tactic, as the affirmative defenses included a substantive coverage denial, which went beyond merely asserting policy conditions as affirmative defenses in order to preserve those defenses while investigating further.

The trial court's order rewrites the procedural history of this case by suggesting that the amended complaint should have been stricken because it was filed without leave. But that is not what happened. The trial court granted the Vainbergs' motion to substitute FIGA as a defendant

and directed the Vainbergs to file an amended complaint. After FIGA's motion to dismiss was denied, FIGA chose not to seek a further extension of time to respond to the amended complaint and instead denied coverage by affirmative action through its affirmative defenses. The amended complaint was never stricken prior to the entry of the consent judgment.[7]

In addition, FIGA's denials of coverage by affirmative action were not limited to a single responsive pleading. We reject FIGA's argument that its post-answer conduct of litigating its affirmative defenses cannot be considered as denials of coverage by affirmative action. While *Ehrlich* and *Rubin* did not discuss FIGA's post-answer litigation conduct in analyzing whether there had been any denials of coverage by affirmative action, those were both cases where FIGA had been prematurely sued before it had an opportunity to investigate. A glaring distinction between this case, on the one hand, and *Ehrlich* and *Rubin* on the other, is that FIGA was substituted into this case in the middle of the litigation. Because FIGA was substituted into the case after we had remanded for a new trial, the relevant question is not whether FIGA had denied the claim by affirmative action before the Vainbergs filed the lawsuit. Obviously, that would have been impossible under the facts of this case.

Given the procedural posture of this case, FIGA was always going to have to take a position on the claim before the new trial. Therefore, the crucial question is whether FIGA denied coverage by affirmative action at any point before the retrial.

Here, the record shows that FIGA's denial was a sustained course of conduct. FIGA's other actions—apart from raising affirmative defenses— amounted to denials by affirmative action that the *Drew* repair claim constituted a covered claim. In addition to denying payment pre-answer for items related to Ordinance and Law coverage as well as denying coverage in its affirmative defenses, FIGA voluntarily took the following affirmative actions of denial before the scheduled retrial: (1) testifying

---

[7] We also disagree with the trial court's characterization of the amended complaint as having added "new allegations that were not in the original Complaint or presented at trial against Avatar." While it is true that the amended complaint was more explicit in alleging a breach of the *Drew* contract on the basis that Avatar and FIGA had "denied payment for Ordinance and Law," the original complaint was broad enough to encompass this theory. The original complaint alleged that Avatar's repairs "would have never passed a building code inspection," and also broadly alleged that the Vainbergs had suffered damages "[a]s a direct and proximate result of AVATAR'S breaches of the repair contract." Moreover, the Vainbergs sought damages at the first trial for code upgrade repairs that should have been performed but were not.

through a corporate representative that the *Drew* repair contract was not "a covered claim"; (2) asserting in the Joint Pretrial Stipulation that the claim was not a covered claim; and (3) arguing in a summary judgment motion that the claim was not a covered claim.

To summarize, after FIGA was substituted into the litigation, FIGA denied the claim by "affirmative action, other than delay" through the following actions: (1) denying payment pre-answer for items related to Law and Ordinance Coverage; (2) denying coverage in its affirmative defenses on the ground that a portion of the claim was not a covered claim; (3) testifying through a corporate representative that the *Drew* repair claim was not a covered claim; (4) denying in the Joint Pretrial Stipulation that the claim was a covered claim; and (5) moving for summary judgment on the ground that the claim was not a covered claim.

For these reasons, we reverse the order denying attorney's fees and remand to the circuit court for the determination of the amount to be awarded.

*Reversed and remanded.*

LEVINE and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely-filed motion for rehearing.**